Colin M. Stephens
SMITH & STEPHENS, P.C.
315 W. Pine
Missoula, MT 59802
Phone: (406) 721-0300
Fax: (406) 721-5370
colin@smithstephens.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA,

## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>CHRISTIN DIANNE DIDIER,<br><br>        Defendant. | Cause No. CR 12-36-M-DWM<br><br>DEFENDANT DIDIER'S<br>SENTENCING MEMORANDUM |

## **INTRODUCTION**

Christin Dianne Didier appears before this Court on July 30, 2013 at 10:00 for sentencing on seven counts of mail fraud and one count of conspiracy to commit mail fraud. Didier, along with her co-defendant, Surayya Nasir, were convicted by a jury after a multi-day jury trial in March, 2013. Prior to sentencing, Didier has served two days in custody. (PSR, pg. 1). With the exception of those two days, Didier has been released on conditions; no violation of those conditions have been reported. Additionally, since her conviction, Didier has given birth to her first child.

In this Memorandum, Didier requests this Court impose a sentence of five years probation, followed by three years supervised release for the offenses of conviction in this case. Such a sentence is sufficient but not greater than necessary given Didier's personal history and characteristics, her medical conditions, and the

severity of the offenses.

## DISCUSSION

The Pre-Sentence Report (PSR) calculates Didier's advisory total offense level as 19.  Didier has no significant criminal history.  Therefore, Didier's advisory guideline range is 30-27 months.  Additionally, Didier also faces an estimated $263,163.25 in restitution, and $800.00 in mandatory special assessments.

This Court has an obligation to sentence Didier pursuant to the statutory factors articulated in 18 U.S.C. § 3553(a).  Among those many considerations is the desire to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *18 U.S.C. § 3553(a)(6)*.  There were 28 fraud prosecutions in the District of Montana in fiscal year 2012.  (USSC Statistical Information Packet, 2012)[1].  Of those 28, only one case proceeded to trial.  20 of the 28 defendants received prison sentences, three received some combination of probation and confinement, and 5 received sentences of probation only.  (Id.)  The mean sentence for the 20 who received prison sentences was 37 months while the mean sentence was 27 months.  Of 28 sentences imposed, 22 were sentenced within the guideline range.  Of the 6 defendants who received sentences outside of the guideline range, 3 appear to have received some type of 5K departure, and the other 3 received downward variances.  The Commission's Statistical Information packet does not differentiate between sentences imposed for different types of fraud (wire, mail, etc.) nor does is set forth gender disparity in its statistical analysis.

For reasons that were obvious at trial and are articulated below, a sentence of probation is sufficient but not greater than necessary for Didier, given her

---

[1]Available at:
http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/State_District_Circuit/2012/mt12.pdf

personal history and characteristics and the nature and severity of the offenses. The advisory guideline range is precisely that, an advisory range which is untethered to the individual reality of the specific circumstances of this case.

The 2012 version of the Sentencing Guidelines[2] establishes a base offense of 7.  An additional 10 points is added based on specific offense characteristics relating to loss.  Recently, this type of loss-based sentencing enhancements has been subjected to a great deal of criticism and attack.  One senior federal judge – a member of special task force of the American Bar Association dedicated to proposing revision in the guidelines for economic crimes –  opined the guidelines "should be scrapped in their entirety."  (Wall Street Journal "White-Collar Sentences Get a Fresh Look, June 20, 2013).  The problem, argue the critics, is that the specific offense characteristics in financial crimes drastically increase the advisory range often by seventy-percent, without consideration to the severity of the offense or the offender.  For example, Dider's offense level for defrauding Chubb Insurance of a specific amount is the same as a defendant who defrauded widows and orphans.  Based simply on the calculated loss, both would receive the same sentence in a *pre-Booker* world.  Thankfully, in light of *Booker* and its ilk, this Court is free to recognize the relative severity of Didier's offenses and sentence accordingly.

Didier's criminal activity pales in comparison to many of the fraud defendants this Court has seen recently.  She is no Dan Two-Feathers, Shauna Raymond, esq., or even Shawn Shor.  All of those individuals used fraud to bilk hard working citizens from hard earned dollars.  This is not to say that the loss experienced by Chubb Insurance (who's CEO ranked 71st on Forbes's top 100

---

[2]Previous versions of the Guidelines have been reviewed and there appear to be no issues implicating the recent decision of *Peugh v. United States*, 186 L. Ed. 2d 84 (2013) as it relates to Didier's case.

compensated CEOs in 2011/2012)[3]  is not significant.  That loss, however, should be measured partially in light of the impact to the victim, i.e. Chubb Insurance. Such a measurement is consistent with 3553(a)'s mandate to consider the severity of the crime.

As to Didier's own personal history and characteristics, her most notable and tragic characteristic at the time of the offense and currently, is the impaired mental functioning which was presented as evidence at trial by Drs. Beljan and Hipskind.  This type of mental condition was, until 2010 normally not to be considered under the Guidelines.  However, in 2010, the Commission revised Section 5H1.3 to state that "mental and emotional conditions may be relevant in determining whether a departure is warranted."  While guideline departures are paretically speaking  no longer an appropriate topic for sentencing discussion, they are appropriate considerations upon which to base a variance.

Didier's mental impairment is, unfortunately, one of her most defining personal characteristics.  Both doctors Hipskind and Beljan testified to the extent of her impairment and the dismal prognosis for any meaningful recovery of her memory and executive function.  It is through the lens of this mental impairment that the remaining 3553(a) factors should be viewed.  For example, Section 3553(a)(2)(C) dictates that the sentence imposed take into consideration the protection of the public from further crimes by the defendant.  The likelihood that Didier poses a future risk to the public at all is minimal.  Didier is 41 years old and, other than the present conviction, has no significant criminal history.  That she now has significant cognitive and memory impairment, makes it highly unlikely she will be a further danger to society.

Additionally, the unique circumstances of this case make it unlikely that

---

[3]http://www.forbes.com/lists/2011/12/ceo-compensation-11_John-D-Finnegan_34SO.html

Didier will either commit a similar crime in the future or pose a further threat to Chubb. The National Insurance Crime Bureau, an agency involved in the investigation of Didier's case and who cooperated with both Chubb and the Government, claims to provide access to various databases to prevent fraud. It is highly likely that Didier's name has been entered into a list of individuals who have perpetrated insurance fraud. Thus, even if she were financially able to buy a home or be in a position to afford insurance again, it is likely that she will either be denied or viewed with a jaundiced eye by any other insurance company.

These internal protections, the fact of the conviction itself, and Didier's current circumstances will also afford adequate deterrence to Didier to refrain from any further criminal activity. *18 U.S.C. § 3553(a)(2)(B)*. Further deterrence will come in the form of the restitution payments Didier will be required to pay as a result of this conviction. Given her current – and likely long term – financial circumstances, a sentence if probation is consistent and sufficient to balance the need for restitution and the severity of the offense.

While Didier objects to the amount of restitution requested by Chubb and adopted in the PSR (see below), she does not doubt that some restitution will necessarily be imposed in this case. 18 U.S.C. § 3553(a)(7) dictates that a sentencing court must, in determining the sentence to be imposed, consider "the need to provide restitution to any victims of the offense." The Ninth Circuit's decisions regarding the concept of restitution as a form of punishment are mixed. *See United States v. Green*, 2013 U.S. App. LEXIS 14033, *10-12 (9th Cir., July 11, 2013). What is clear, however, is that Congress has incorporated the notion of restitution into *3553(a)* and it is incumbent on this Court to consider the need for Didier to provide restitution to "any victims of the offense." In this case, that victim is Chubb.

Chubb has calculated its restitution amount at $263,163.25. (PSR, ¶ 20). In

its claim, Chubb makes no mention of the Mutual Release it executed with the Bankruptcy Trustee on June 14, 2010.  (Exhibit A).  As was made abundantly clear at trial and is set forth in paragraphs 1-5 of the PSR, the offense conduct in this case occurred between January 2008 and July 19, 2008.  Thus, the Mutual Release, signed on Didier's behalf by the Bankruptcy Trustee, was executed between Didier and Chubb long after the offense conduct.  In this Mutual Release, both Chubb/Pacific Indemnity and Didier mutually agreed to

> further release and discharge each other . . . from any and all actions, claims, causes of action, demands, or expenses for damages or injuries, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising out of the *described claims*.

(Exhibit A, pg. 1) (emphasis added).  Key to this release is the definition of the "described claims."  The Mutual Release defines the "described claims" as "property damage and breach of claims by [Didier] against [Pacific Indemnity Company and Chubb] and claims for fraud and misrepresentation by [Didier] against [Pacific Indemnity and Chubb."  (Exhibit A, pg. 1).  In other words, the Mutual Release was a legally binding document in which Didier and Chubb mutually agreed to release each other from all expenses and claims including Didier's fraud and misrepresentation.

Despite the benefit Chubb received from this Mutual Release, it now seeks restitution for Didier's fraud and misrepresentation.  Among those restitution requests is included $64,807.54 for attorney costs for an SIU investigation, $1,200.00 for a private investigator to investigate the lake cabin, $7,014.00 for investigative time by Chubb employees, and $1,801.71 for travel expenses for those employees.  Therefore, Chubb is attempting to recover $74,823.25 in restitution for damages for which it had already agreed to release through the Mutual Release.  For this release, Didier agreed to dismiss two civil claims she had filed against Chubb and waive her right to claim further monies from her

insurance policy for repairs to the home.

Additionally, Chubb is seeking restitution for $50,000.00 it made to Didier as an advance for living expenses on January 22, 2008.  This $50,000.00 check was made to Didier approximately six days before Didier even suggested to Chubb or ALE Solutions that she might reside in a property she found herself, i.e. the lake cabin.  (Exhibit B, 1/28/2008 entry).  It certainly came after Didier made any misrepresentation about either the ownership or physical state of the residence.  There is absolutely no evidence that this $50,000.00 was directly tied to Didier's misrepresentations or criminal conduct.  Rather, it appears that Chubb would have made this payment to Didier regardless of where she choose to live.  When the $50,000.00 payment was made, Didier was still in the process of working with ALE Solutions to find a residence that suited both Chubb and Didier.  Even assuming this $50,000.00 is not covered by the Mutual Release, Didier should not be forced to pay restitution for an advanced payment that is completely disassociated from the fraud.  From all evidence, this payment was made by Chubb and deducted from her total covered claim without any regard to where she would ultimately reside.  (Exhibit C).

Didier asks this Court to consider both the Mutual Release and the circumstances of the $50,000.00 payment when calculating its restitution order.  She would also, pursuant to this Court's discretionary authority set forth in *18 U.S.C. § 3644*, Didier requests the Court not require interest payments as part of its restitution order.

"A restitution order that does not offset recovered settlement amounts for the same losses violates *18 U.S.C. § 3664(j)(2)*, and thus, constitutes an illegal sentence.  When it is apparent at sentencing that some restitution to victims has been made and the district court has no provided an offset to the restitution order, [an appellate court] must vacate and award remand for recalculation." *United*

*States v. Clark*, 597 F.2d 659, 661 (9th Cir. 1992). In this case, the Mutual Release operates as a form of settlement provided to Chubb for the same losses Chubb now claims as restitution. This Mutual Release had an economic value, otherwise it would not have required the authorization of the Bankruptcy Trustee. Both Didier and Chubb entered into a contract to release each other from certain financial obligations arising from both the insurance policy and the fraud. Thus, long before Didier's criminal conviction, Chubb had made a determination that Didier had committed a fraud; through the Mutual Release, they agreed to release her from all claims arising from that fraud including expenses and damages both present and future. That Chubb now seeks restitution for expenses it had previously released violates the contract created by the Mutual Release. For this Court to include those expenses and damages in a restitution order would be to ignore the financial benefit Chubb gained from that Release and reward it for expenses it had agreed to waive.

Again, assuming the $50,000.00 additional living expenses payment is not subject to the Mutual Release, this payment precedes Didier's criminal wrongdoing. *18 U.S.C. § 3663*, requires the court, "in determining whether to order restitution" to consider "the amount of the loss sustained by the victim *as a result of the offense*." *18 U.S.C. § 3663(a)(1)(B)(i)(I)*. As noted above and demonstrated in Exhibits B and C, the $50,000.00 payment was made by Chubb before any of Didier's fraudulant activity. As such, it is not a result of the offense as defined by the applicable restitution statutes. Therefore, it should not be included in the Court's restitution order.

Therefore, in considering the restitution in this matter, Didier requests this Court properly reduce the restitution amount to a total of $138,340 ($263,163.25 - $124,823.25 = $138,340), i.e., the amount resulting from the ALE rental payments and Ms. Nasir's commission.

## CONCLUSION

While it is incumbent on this Court to consider the severity of the crime and to avoid disparate sentences, Didier is truly a unique individual with unique characteristics. Based on the testimony at trial, she suffers from a debilitating and permanent form of brain damage. While the jury found that such damage did not excuse her behavior, the damage must certainly act as a mitigating factor for sentencing purposes especially in light of the Sentencing Commissions revisions to Section 5H1.3. In previous versions of the Guidelines, mental and emotional conditions were not normally relevant in determining whether a guidelines departure was warranted. In 2010, the Commission amended Section 5H1.3 to acknowledge the possible relevance of mental conditions when crafting a sentence under the guidelines. While discussion of departures has become passee, this amendment to the guidelines is an acknowledgment that mental conditions may justify a lower than normal sentence if "such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." *U.S.S.G. § 5H1.3.* A similar recognition of mental impairment justifying a lower sentence is reflected in *U.S.S.G. § 5K2.13*.

Here, two separate doctors testified to the breadth of Didier's mental impairment. That impairment, coupled with facts that she is a Criminal History Category I and the circumstances of the offense surround a complex and legally ambiguous insurance contract justify a sentence of probation as sufficient but not greater than necessary. These statements in the guidelines and the principles of lenity and parsimony articulated in *18 U.S.C. § 3553(a)*, demonstrate that a sentence of probation, while somewhat disparate from the average fraud sentences imposed in the District of Montana, is sufficient but not greater than necessary for Didier.

For the reasons set forth above and the medical testimony elicited at trial, Didier respectfully requests this Court impose a sentence of probation for the offenses of conviction in this matter.

Respectfully submitted this 15th day of July, 2013.


/s/ Colin M. Stephens
Colin M. Stephens
SMITH & STEPHENS, P.C.
Attorney for Didier


## CERTIFICATE OF COMPLIANCE

Pursuant to 47.2, I hereby certify that this Sentencing Memorandum complies with all requirements set forth in CR 12.1 it that it:

(1)     is double spaced in a proportionally spaced font;

(2)     is prepared in a 14 point Times New Roman Font;

(3)     and does not exceed the required word limit, exact words are 2889.

Respectfully submitted this 15th day of July, 2013.


/s/ Colin M. Stephens
Colin M. Stephens
SMITH & STEPHENS, P.C.
Attorney for Didier

-10-

## <u>CERTIFICATE OF SERVICE</u>

I, Colin M. Stephens, do hereby certify that I delivered a true and correct copy of this Defendant Didier's Sentencing Memorandum to the following individuals via the means indicated below.

Timothy J. Racicot.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . CM/ECF
Assistant United States Attorney

Michael Donahoe.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . CM/ECF
Federal Defender
Counsel for co-defendant Nasir

Dated this 15th day of July, 2013.

 /s/ Colin M. Stephens
Colin M. Stephens
SMITH & STEPHENS, P.C.
Attorney for Didier